The Honorable James L. Robart

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

GORDON BROWARD and SHAADI
NEZAMI, individually and as representatives
of a class of similarly situated persons, on
behalf of the MICROSOFT CORPORATION
SAVINGS PLUS 401(K) PLAN,

Plaintiffs,

v.

MICROSOFT CORPORATION; THE
BOARD OF TRUSTEES OF MICROSOFT
CORPORATION; THE 401(K)
ADMINISTRATIVE COMMITTEE OF THE
MICROSOFT CORPORATION SAVINGS
PLUS 401(K) PLAN; and DOES NO. 1-20,
Whose Names Are Currently Unknown,

Defendants.

Case No. 2:22-cv-01082-JLR

DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
March 31, 2023

*ORAL ARGUMENT REQUESTED*

DEFS' MOT. TO DISMISS THE AM. COMPL.
(Case No. 2:22-cv-01082-JRL)

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 4

    A.    The Plan. ................................................................................................. 4

    B.    Target-Date Funds and the Same Comparator TDFs............................... 5

    C.    The Amended Complaint's New Benchmark: The S&P Target Date Index. ........ 5

ARGUMENT ......................................................................................................... 7

    A.    Standard of Review. ............................................................................... 7

    B.    The Amended Complaint Fails to State a Plausible Claim for Breach of the Duty of Prudence Merely Because the Plan Offered the BlackRock TDFs. ......... 8

        1.    The Amended Complaint's Underperformance Allegations Still Fail to Support a Plausible Claim of Fiduciary Breach. ............................ 9

        2.    Plaintiffs Fail to Allege Any Meaningful Benchmark(s) for the BlackRock TDFs, Whether the Comparator TDFs or Otherwise. ........... 14

            a.    The Comparator TDFs Are Still Not Meaningful Benchmarks. ................................................................. 15

            b.    The S&P Target Date Index Is Not a Meaningful Benchmark. ..................................................................... 16

        3.    Plaintiffs Still Ignore the Public Ratings, and Market Assessments of the BlackRock TDFs Further Refute Any Suggestion of Imprudence. ............................................................................. 19

    C.    Plaintiffs' Secondary Claims Fail as a Matter of Law. ....................................... 20

CONCLUSION..................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022), *reh'g denied*, 2022 WL 4372363 (7th Cir. Sep. 21, 2022) ............................................................................................................7, 14

*Anderson v. Intel Corp.*,
2021 WL 229235 (N.D. Cal. Jan. 21, 2021), *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022) ........................................................................................13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................7

*Circle Click Media, LLC v. Regus Mgmt. Grp., LLC*,
743 F. App'x 883 (9th Cir. 2018) ............................................................................8

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................................................................................................8

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020), *aff'd in rel. part*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) .....................................................................14, 17

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014)..................................................................................................7

*Hughes v. Nw. Univ.*,
142 S. Ct. 737 (2022)..........................................................................................7, 12

*Kendall v. Pharm. Prod. Dev., LLC*,
2021 WL 1231415 (E.D.N.C. Mar. 31, 2021) ......................................................17

*Meiners v. Wells Fargo & Co.*,
898 F.3d 820 (8th Cir. 2018) ...................................................................1, 9, 10, 14

*Parmer v. Land O'Lakes*,
518 F. Supp. 3d 1293 (D. Minn. 2021)..................................................................17

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ................................................................................................10

*Rosenkranz v. Altru Health Sys.*,
    2021 WL 5868960 (D.N.D. Dec. 10, 2021)..........................................................................17

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ..................................................................................... *passim*

*PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*
    *Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)......................................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................................4

*Town of Chester v. Laroe Estates, Inc.*,
    137 S. Ct. 1645 (2017).............................................................................................................8

*White v. Chevron*,
    752 F. App'x 453 (9th Cir. 2018) ................................................................................. *passim*

**Statutes**

ERISA ........................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................2, 4, 7, 14

## INTRODUCTION

Plaintiffs' first complaint alleged that the fiduciaries of the Microsoft Corporation Savings Plus 401(k) Plan (the "Plan") breached their ERISA duty of prudence by selecting the BlackRock LifePath Index Target Date Funds ("BlackRock TDFs") as Plan investments instead of four TDF suites that performed modestly better during parts of the putative class period. The Court dismissed that complaint because Plaintiffs' allegations "showed only that [Microsoft] could have chosen different vehicles for investment that performed better during the relevant period," and those allegations did not make it "more probable than not that any breach of a fiduciary duty had occurred." Order Granting Defendants' Motion to Dismiss ("Order"), Docket 57, at 16-17 (quoting *White v. Chevron*, 752 F. App'x 453, 455 (9th Cir. 2018); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022); *Meiners v. Wells Fargo & Co*., 898 F.3d 820, 823 (8th Cir. 2018)). Plaintiffs' Amended Complaint relies on the same flawed theory that the Court previously found wanting and should be dismissed, this time with prejudice and without further leave to amend.[1] Plaintiffs make only two notable changes between their original allegations and those in the Amended Complaint—one excision and one addition. Neither saves their claims from dismissal. As with the original complaint, the Amended Complaint focuses solely on backward-looking performance, which does not state a cognizable claim under ERISA given the facts alleged.

In fact, Judge Nachmanoff of the Eastern District of Virginia just dismissed the amended complaints in *Hall v. Capital One* and *Tullgren v. Booz Allen Hamilton*—amended complaints that are virtually identical to the amended complaint filed in this case. *Hall et al. v. Capital One Fin. Corp., et al.*, No. 1:22-cv-00857-MSN-JFA, Mem. Op. and Order, Docket 61 (attached as Exhibit 1)[2] and *Tullgren v. Booz Allen Hamilton, et al.*, No. 1:22-cv-00856-MSN-IDD, Mem. Op. and Order, Docket 49 (attached as Exhibit 2). Judge Nachmanoff explained:

---

[1] Plaintiff Beldock is no longer a plaintiff in the action. For the reasons explained below, the remaining Plaintiffs still lack Article III standing to seek prospective injunctive relief for the same reasons explained by the Court in the Order.

[2] All the exhibits cited herein are attached to the accompanying Declaration of Sean McMahan.

DEFS' MOT. TO DISMISS THE AM. COMPL.    1
(Case No. 2:22-cv-01082-JRL)

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101

> Underperformance of the BlackRock TDFs is all that Plaintiff alleges. Plaintiff has provided no factual allegations from which the Court may reasonably infer that the choice of the BlackRock TDFs was imprudent from the moment the administrator selected it, that the BlackRock TDFs became imprudent over time, or that the BlackRock TDFs were otherwise clearly unsuitable for the goals of the fund based on ongoing performance. Plaintiff alleges nothing beyond data allegedly indicating the BlackRock TDFs' disappointing performance relative to Plaintiff's preferred alternatives over the course of a limited period of time. The addition of the Sharpe ratio and S&P Index to the Amended Complaint does not alter this analysis, as these are merely additional measurements of investment performance.

*Capital One*, Mem. Op. and Order, Exhibit 1, at 11; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 11. The same is true here.

Specifically, Plaintiffs again allege the Court should infer that the Plan fiduciaries breached ERISA's duty of prudence by offering the BlackRock TDFs because those funds generated lower three- and five-year returns at certain points during the class period than the same four TDF suites that Plaintiffs relied on previously (the "Comparator TDFs"), while also purportedly underperforming a new comparator, the S&P Target Date Index.[3] Plaintiffs still *do not* allege any "red flags" or other indicia of imprudence that, in conjunction with the purported underperformance, support the inference that Defendants "breached their fiduciary duty of prudence by selecting the BlackRock TDFs, failing to monitor them, and retaining them in the Plan." Order, Docket 57, at 16. *See also* Report of Proceedings Before the Honorable James L. Robart ("Transcript"), Exhibit 3 at 7 ("As I understand it from the cases that I have been able to find, the things that have usually triggered a breach of fiduciary duty of prudence and loyalty would be either excessive fees, ignoring red flags about the investment offerings, failure to follow the plan's governing documents, or self-dealing."). In short, Plaintiffs double down on the same deficient allegations as before, while adding a handful of superficial allegations that do not change the salient analysis. The Ninth Circuit in *White* affirmed Rule 12(b)(6) dismissal of the same sorts

---

[3] In addition to the S&P Target Date Index, the Comparator TDFs in the Amended Complaint (and the original complaint) are (i) a Vanguard TDF; (ii) an American Funds TDF; (iii) a T. Rowe Price TDF; and (iv) a Fidelity Freedom Index TDF. *See* Am. Compl. ¶¶ 39-41.

DEFS' MOT. TO DISMISS THE AM. COMPL.   2   **MORGAN, LEWIS & BOCKIUS LLP**
(Case No. 2:22-cv-01082-JRL)   1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101

of performance comparisons, and Plaintiffs' claims here fail for the same reasons. *See also Capital One*, Mem. Op. and Order, Exhibit 1, at 11-12; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 11-12.

Further, Plaintiffs' revised underperformance allegations are separately insufficient on broader terms. Even assuming a performance-only theory could suffice to state a plausible fiduciary-breach claim in some theoretical case (and the case law says otherwise), this is certainly not that case. There are no allegations that the BlackRock TDFs underperformed the Comparator TDFs or the S&P Target Date Index by a magnitude that would suggest an imprudent investment. If anything, Plaintiffs weakened their allegations by conspicuously abandoning their performance charts from the end of 2019 through 2022 (likely because they showed the BlackRock TDFs outperforming many of the Comparator TDFs). Plaintiffs' attempt to run away from those facts means they are now focused on an even more truncated period—three years, from 2016 through 2019—which cannot suffice, especially given the modest underperformance alleged.

Plaintiffs' introduction of a new performance metric—the "Sharpe ratio"—does not advance their claims. Sharpe ratios, as the Amended Complaint reflects, measure risk-adjusted returns, i.e., another gloss on performance measurement. And whether Plaintiffs attack the BlackRock TDFs based on *actual* returns or *risk-adjusted* returns, the overall approach is still the same: Plaintiffs' claims rest entirely on alleged underperformance of the BlackRock TDFs, for three- and five-year hindsight periods at certain points during the class period, as compared to other (inapt) benchmarks, without pointing to any other indicia of prudence that should have prompted the Plan's fiduciaries to jettison the BlackRock TDFs. *See also Capital One*, Mem. Op. and Order, Exhibit 1, at 14-15; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 14-15.

Moreover, Plaintiffs still do not compare the BlackRock TDFs to any meaningful benchmarks. Instead, they rely on the same four inapt Comparator TDFs. Beyond that, Plaintiffs proffer one new comparison—the S&P Target Date Index—but it is no more meaningful than the Comparator TDFs, as the Amended Complaint itself reflects. After all, Plaintiffs allege that the

DEFS' MOT. TO DISMISS THE AM. COMPL.            3
(Case No. 2:22-cv-01082-JRL)

**MORGAN, LEWIS & BOCKIUS LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101

S&P Target Date Index is just an "amalgamation" of other TDF suites in the market. In other words, the S&P Target Date Index suffers from the same problems as the Comparator TDFs because it is essentially just a mash-up of those same funds, and so it likewise does not share the same investment strategy, style, risk profile, or asset allocation as the BlackRock TDFs. This is especially true considering that Plaintiffs did not even choose the S&P Target Date Index for target-date funds that follow a "to retirement" strategy, like the BlackRock Funds—but instead selected the generic S&P Target Date Index category that lumps together all TDF suites in the market, "to retirement" and "through retirement" alike. Plaintiffs' continued failure to allege any meaningful benchmark(s) dooms their claim. *See also Capital One*, Mem. Op. and Order, Exhibit 1, at 14-15; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 14-15.

For all of these reasons, or any one of them alone, the Court should dismiss Plaintiffs' claim for breach of ERISA's duty of prudence. And because Plaintiffs' secondary claims are derivative of their primary claim, the Court should dismiss those too. Plaintiffs' Amended Complaint fails to state any plausible claims and should be dismissed—this time, with prejudice.

## STATEMENT OF FACTS[4]

### A.   The Plan.

The Plan is a participant-directed defined-contribution plan, which means participants can choose from among the various investment options offered by the Plan in which to invest their own retirement assets. Am. Compl. ¶ 19. The Plan's investment options include various mutual funds, collective trust funds, SMAs, Microsoft common stock, and a self-directed brokerage account, as well as the BlackRock TDFs at issue here. *See id*. Each participant's account is credited with the participant's own retirement contributions, Microsoft's matching contributions, and their

---

[4] This summary comes from Plaintiffs' allegations or publicly available documents referenced in the Amended Complaint, which are appropriately considered in connection with Microsoft's motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (at the Rule 12(b)(6) stage, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

investment earnings, which together combine to determine a participant's retirement benefit. *Id.*

## B.    Target-Date Funds and the Same Comparator TDFs.

Microsoft's original Motion to Dismiss described in detail the characteristics of target-date funds like the BlackRock TDFs, as well as the most meaningful differences between different suites (or families) of target-date funds in the market. *See* Docket 27, Mot. to Dismiss Mem. ("MTD Mem.") at 3-6. That discussion is summarized as follows:

- **Glidepath Strategy**. A target-date fund may use either a "to retirement" or a "through retirement" glidepath. A target-date fund with a "to" approach reduces the fund's equity exposure over time so that the fund reaches its most conservative point at the target retirement date, while a fund utilizing a "through" approach reduces equity exposure through and beyond the target retirement date so that the fund does not reach its most conservative point until years after the retirement date. The BlackRock TDFs use a "to retirement" glidepath, while the Comparator TDFs all use a "through retirement" strategy. *See* MTD Mem., Docket 27, at 5-9 (and cited references). *See also* Am. Compl. ¶¶ 26-27, 44.

- **Management Strategy**. Target-date funds are characterized as either "actively managed" or "passively managed," depending on the underlying investments. The BlackRock TDFs and two Comparator TDFs (the Vanguard and Fidelity TDFs) are passively managed, because they invest in underlying funds that are passively managed funds, while the other two Comparator TDFs (American Funds and T. Rowe Price) are actively managed, because they invest in underlying funds that are actively managed. *See* MTD Mem., Docket 27, at 5-9 (and cited references). *See also* Am. Compl. ¶ 28.

- **Investment Strategy**. Different target-date vintages managed by different managers will hold different percentages of equities, bonds, and other assets. And while two different target-date funds of the same vintage might have the same overall percentage of assets allocated to "equities" or "bonds" as a general matter, they might differ in their holdings of specific types of equity funds or bond funds, or the allocation among them. As before, the Amended Complaint alleges only the "current" percentage of the BlackRock TDFs that are in "equities" generally but says nothing about which types of equity funds are held within that general category or the percentages of those holdings. The Amended Complaint alleges the percentages of the various BlackRock TDFs that are in bonds and cash combined, but does not offer a breakdown of the percentage holdings in bonds, let alone the types of bond funds held. *See* MTD Mem., Docket 27, at 5-9 (and cited references). *See also* Am. Compl. ¶¶ 43 & n.10, 44.

## C.    The Amended Complaint's New Benchmark: The S&P Target Date Index.

The Amended Complaint adds one new performance benchmark: the S&P Target Date Index. Am. Compl. ¶¶ 45-47. The S&P Target Date Index is "a composite" of various target-date funds available in the market. *Id.* ¶ 46. It comprises "a separately calculated index for each target

date," and each "measures the performance of sub-indices selected and weighted to represent a consensus of the opportunity set available in the U.S. universe of target date funds." *See* Exhibit 4, S&P Target Date Index Series Methodology ("Methodology") at 2*; see also* Am. Compl. ¶ 46 and n.11. Thus, as Plaintiffs acknowledge, each composite index represents "*the disparate strategies and styles* present in the broad universe of investible alternative TDFs." Am. Compl. ¶ 46 (emphasis added); *see also id.* ("the S&P Indices provide an *amalgamation* of the different characteristics of TDF strategies" (emphasis added)). As described in the S&P Target Date Index Methodology cited in the Amended Complaint, there are several different types of S&P indices for target-date funds. *See* Am. Compl. ¶ 46, n.11; Methodology, Exhibit 4, at 2.

First, there are generic and broad-based S&P Target Date Index series—the kind relied upon by Plaintiffs. Because these S&P Indices are composites of a "broad universe" of TDFs, they reflect many different glidepath, management, and investment strategies that differ significantly from the strategies and styles of the BlackRock TDFs. Am. Compl. ¶ 46. For example, the S&P Indices cited in the Amended Complaint reflect *both* "to retirement" and "through retirement" glidepath strategies (whereas the BlackRock TDFs use only a "to" strategy). They also reflect *both* "passive" and "active" management styles (whereas the BlackRock funds use only a "passive" strategy). And the S&P Indices reflect various investment strategies (i.e., different underlying equity and bond holdings) that differ substantially from the BlackRock TDFs' holdings.

Second, there are S&P Target Date Style Index series, which Plaintiffs did not use in their Amended Complaint. Unlike the generic S&P Indices described above, the S&P Target Date Style Index series "classify funds in the survey into two styles, the TO style and the THROUGH style." Methodology, Exhibit 4, at 2. In other words, the S&P Target Date "THROUGH" Index only includes TDFs that employ a "through retirement" glidepath strategy (like the Comparator TDFs), whereas the S&P Target Date "TO" Index only includes TDFs that use a "to retirement" strategy (like the BlackRock TDFs). Despite the availability of the S&P Target Date "TO" Style Index, the Amended Complaint compares the BlackRock TDFs to the broad S&P Target Date Index, which

encompasses TDFs with *both* "to" and "through" strategies. Plaintiffs proffer no explanation for this decision.

## ARGUMENT

### A.    Standard of Review.

ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans." *CommonSpirit*, 37 F.4th at 1162. In assessing ERISA fiduciary-breach claims under Rule 12(b)(6), courts apply the settled pleadings standards from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), by evaluating a complaint's allegations "as a whole" and "giv[ing] due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022); *see also, e.g.*, *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022), *reh'g denied*, 2022 WL 4372363 (7th Cir. Sep. 21, 2022). "Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts," courts must conduct a "careful, context-sensitive scrutiny of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Hughes*, 142 S. Ct. at 742; *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). Rule 12(b)(6) is an "important mechanism for weeding out meritless claims" in the ERISA context. *Dudenhoeffer*, 573 U.S. at 425; *see also Albert*, 47 F.4th at 577. This is because "the prospect of discovery" in these cases is "ominous" and "elevates the possibility that a plaintiff with a largely groundless claim will simply take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value." *PBGC ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*St. Vincent*"), 712 F.3d 705, 718-19 (2d Cir. 2013) (internal quotations and citation omitted).

In dismissing Plaintiffs' original complaint, this Court explained that:

> In *White v. Chevron*, 752 F. App'x 453, 455 (9th Cir. 2018), the Ninth Circuit applied these rules and affirmed the district court's dismissal of the plaintiffs' claims for breaches of ERISA's fiduciary duties of loyalty and prudence. The court

concluded in that case that the plaintiffs' allegations were insufficient to support a plausible inference that the defendant breached its fiduciary duties because they "showed only that [the defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund" and that "[n]one of the allegations made it more probable than not that any breach of a fiduciary duty had occurred." *Id.* at 455. The same is true here.

Order, Docket 57, at 16-17. Nothing in the Amended Complaint fixes that fundamental problem or changes that conclusion.[5] *See also Capital One*, Mem. Op. and Order, Exhibit 1, at 11-15; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 11-15.

> **B.    The Amended Complaint Fails to State a Plausible Claim for Breach of the Duty of Prudence Merely Because the Plan Offered the BlackRock TDFs.**

The Amended Complaint rehashes the same theory this Court previously dismissed for failure to state a plausible claim: Microsoft's fiduciary process was imprudent because the Plan included the BlackRock TDFs as investment options. Plaintiffs' only argument for drawing such an inference remains the same: they contend any prudent fiduciary would have concluded that the BlackRock TDFs were "putrid" investment options, Am. Compl. ¶ 47 n.13, because the Comparator TDFs occasionally generated greater three- and five-year returns during portions of the putative class period. The Court already rejected this claim as implausible because underperformance alone does not "tend to exclude the possibility" that the decision to retain the BlackRock TDFs was consistent with the fiduciary duties imposed by ERISA. Order, Docket 57, at 17.

---

[5] Plaintiffs persist in their claim for injunctive relief, even though they lack Article III standing to seek such relief because they are not current Plan participants. Order, Docket 57, at 12-13. It is well settled that a "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation omitted). In a case seeking prospective relief, that means a plaintiff must demonstrate that he is personally "likely to suffer future injury from the allegedly improper behavior of the defendant to have Article III standing for injunctive relief." *Circle Click Media, LLC v. Regus Mgmt. Grp., LLC*, 743 F. App'x 883, 884 (9th Cir. 2018) (Mem) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Here, Plaintiffs allege that they invested in the BlackRock TDFs but also admit that they are *former* participants of the Plan. Am. Compl. ¶¶ 9-10. Accordingly, *as this Court already held*, they lack standing to seek injunctive relief. Order at 12 ("Defendants argue that none of the three Plaintiffs, who are all former Microsoft employees and former participants in the Plan, have standing to seek prospective injunctive relief because they would not benefit from such relief if it were granted. Again, the court agrees with Defendants." (citations omitted)).

The Amended Complaint ignores the Court's prior ruling, and Plaintiffs' claims fail again for the same reasons: (1) Plaintiffs' underperformance allegations remain deficient for the same reasons as before—if anything, Plaintiffs' conspicuous decision to drop the more recent performance charts showing the BlackRock TDFs *outperforming* the Comparator TDFs renders these allegations even more implausible; (2) Plaintiffs rely on the same four inapt Comparator TDFs; (3) Plaintiffs' new proposed comparison—to the S&P Target Date Index—fares no better, for largely the same reasons; and (4) Plaintiffs still continue to ignore the multiple public market indicators showing that the BlackRock TDFs are strong and highly rated investment options. *See also Capital One*, Mem. Op. and Order, Exhibit 1, at 11-15; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 11-15.

**1.      The Amended Complaint's Underperformance Allegations Still Fail to Support a Plausible Claim of Fiduciary Breach.**

Plaintiffs' allegations that the BlackRock TDFs generated lower investment returns than the Comparator TDFs at certain points in the relevant period fail to state a claim for the same reasons this Court previously identified: underperformance-only allegations do not support the inference that ERISA fiduciaries utilized a flawed process for selecting or monitoring investments. The Court explained:

> The court need not decide whether the Comparator TDFs are meaningful benchmarks because even if they are, Plaintiffs have not plausibly alleged that Defendants breached their fiduciary duty of prudence by selecting the BlackRock TDFs, failing to monitor them, and retaining them in the Plan. . . . In *White v. Chevron*, 752 F. App'x 453, 455 (9th Cir. 2018), the Ninth Circuit [] affirmed the district court's dismissal of the plaintiffs' claims for breaches of ERISA's fiduciary duties of loyalty and prudence. The court concluded in that case that the plaintiffs' allegations were insufficient to support a plausible inference that the defendant breached its fiduciary duties because they "showed only that [the defendant] could have chosen different vehicles for investment that performed better during the relevant period, or sought lower fees for administration of the fund" and that "[n]one of the allegations made it more probable than not that any breach of a fiduciary duty had occurred." *Id.* at 455. The same is true here.

Order, Docket 57, at 16-17. This Court also cited and quoted the Sixth Circuit's decision in *CommonSpirit* and the Eighth Circuit's decision in *Meiners* as consistent with *White* and

compelling dismissal of Plaintiffs' Complaint here. *See id.*, citing *CommonSpirit*, 37 F.4th at 1166 ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty."); *Meiners*, 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [challenged TDFs] were an imprudent choice at the outset… No authority requires a fiduciary to pick the best performing fund."). Underperformance is all that Plaintiffs offer in their Amended Complaint, and it still fails to state a claim under this Court's Order, Judge Nachmanoff's decisions in *Capital One* and *Booz Allen Hamilton*, as well as the appellate decisions in *White*, *CommonSpirit*, and *Meiners*.

In fact, the plaintiffs in *White* made the same sorts of allegations regarding the challenged Artisan Small Cap Value Fund in that case, with the same sorts of charts and graphs. *White v. Chevron Corp.*, Am. Compl., Docket 41, ¶¶ 132-140.[6] In relevant part, the *White* complaint alleged:

> The Artisan Small Cap Value Fund consistently ranked in bottom decile of its Morningstar category ranking for one-, three-, and five-year periods on a quarterly basis between March 31, 2010 and March 31, 2014.

> The chart below demonstrates the loss in retirement savings from Chevron's failure to remove the Artisan Small Cap Value Fund with $130 million in it as of January 2010. The chart shows the investment returns of the Artisan Small Cap Value Fund (ARTVX), the fund's benchmark (Russell 2000 Index), and similar small cap value alternatives, the Vanguard Small Cap Value Index Fund (VSIIX) and the Vanguard Small Cap Index Fund (VSCPX).

*Id.* ¶¶ 133, 135 (charts and graphs omitted). The Ninth Circuit held that those allegations did not state a claim in *White*. Judge Nachmanoff held that Plaintiffs' same allegations did not state a claim in *Capital One* and *Booz Allen Hamilton*. And the same sorts of allegations do not state a claim in

---

[6] A copy of the amended complaint in *White* is attached as Exhibit 5 for the Court's convenience. The Court can take judicial notice of that amended complaint and consider it in the context of Plaintiffs' claims here. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (courts "may take judicial notice of court filings and other matters of public record."). The amended complaint in *White* is the one the Ninth Circuit was considering when it affirmed dismissal of the plaintiffs' claims in that case.

the Amended Complaint here either.

Beyond the BlackRock TDFs' alleged relative three- and five-year hindsight underperformance for certain periods, as compared to their preferred alternatives, Plaintiffs still do not allege any "red flags" that they contend should have caused the fiduciaries to jettison the BlackRock TDFs as investment options in the Plan—e.g., allegations that independent analysts rated the BlackRock TDFs poorly, that the BlackRock TDFs charged excessive fees, that other investors were fleeing the BlackRock TDFs and withdrawing assets, or anything of the sort. To the contrary, the public and judicially noticeable facts are precisely the opposite—strong ratings and substantial investment inflows. *See* MTD Mem., Docket 27, at 23-24. Plaintiffs similarly make no allegations that Defendants engaged in a conflict of interest or other prohibited transaction by maintaining the BlackRock TDFs in the Plan.

Separately, even if standalone allegations of underperformance could theoretically state a claim in some potential case, the allegations put forward here surely do not pass muster. Plaintiffs make two notable changes between their original allegations and those in the Amended Complaint—one excision and one addition. Neither saves their claims from dismissal.

First, Plaintiffs *deleted* their charts comparing the three- and five-year historical performance of the BlackRock TDFs against the Comparator TDFs from late 2019 through the second quarter of 2022. *Compare* Compl. ¶ 43, *with* Am. Compl. ¶¶ 49-51. The reason seems clear: Plaintiffs only want to highlight cherry-picked periods in which the BlackRock TDFs allegedly underperformed the proffered Comparator Funds. Previously, Plaintiffs' own data showed that the BlackRock TDFs *outperformed* some—and sometimes all—of the Comparator TDFs over the three- and five-year periods that include virtually the entire putative class period. *See* MTD Mem., Docket 27, at 21-22. To state the obvious, that outperformance undermined Plaintiffs' assertions that the performance of the BlackRock TDFs as compared to the Comparator TDFs was "putrid," and effectively doomed their theory that the BlackRock TDFs' performance alone rendered that

suite of funds imprudent.[7] And while Plaintiffs might think that jettisoning those allegations helps their claims, it only leaves them more implausible. The Amended Complaint now alleges only modest relative three- and five-year performance discrepancies against the Comparator Funds, over just a few years, which still does not state a claim of imprudence. *See* Order, Docket 57, at 16-17; *White*, *supra*. *See also* MTD Mem., Docket 27, at 18-19.[8]

As for the addition, Plaintiffs introduce allegations about "Sharpe ratios" in attacking the performance of the BlackRock TDFs. Sharpe ratios, as Plaintiffs allege, are another measurement of investment performance that considers "risk-adjusted return[s]." *See* Am. Compl. ¶¶ 48-51 (alleging the BlackRock TDFs' Sharpe ratio "ranking" among the Comparator TDFs from 2Q16 through 3Q19). But this is just another way of saying the same thing Plaintiffs have been saying all along—that the Court should infer imprudence solely because the BlackRock TDFs allegedly did not generate three- and five-year investment returns that were as high as those generated by other, different TDF products. As the example in the Amended Complaint makes clear, one can calculate and compare the Sharpe ratios of *any* two investments, e.g., a domestic bond fund and an international equity fund, but that does not mean the two carry the same risks or have the same holdings or strategies, or that they are meaningful benchmarks for each other. Am. Compl. ¶ 48, n.14.[9] The same is true regarding target-date funds. *See Capital One*, Mem. Op. and Order, Exhibit 1, at 14 ("The Sharpe ratio assesses risk adjusted across investments to account for differences in

---

[7] Plaintiffs use even more overblown adjectives and adverbs in the Amended Complaint. *See, e.g.*, Am. Compl. ¶ 31 ("significantly worse performing"), ¶ 33 ("clearly inferior"), ¶ 37 ("vastly inferior"), ¶ 47 n.13 ("putrid"), ¶¶ 50, 56 ("deplorable"). But no amount of rhetoric can save Plaintiffs' deficient factual allegations.

[8] Plaintiffs still recognize that the BlackRock TDFs performed better in more recent years and simply characterize that outperformance as "modest" and "immaterial in nature." Am. Compl. ¶ 53. This skirts the issue by merely dismissing the inconvenient fact that the BlackRock TDFs outperformed Plaintiffs' Comparator TDFs at various points across the putative class period, thereby undermining *Plaintiffs' own* flawed claims that are based exclusively on three- and five-year hindsight performance. This further demonstrates that offering the BlackRock TDFs was not outside the "range of reasonable judgments" that fiduciaries could make. *Hughes*, 142 S. Ct. at 742.

[9] Plaintiffs' example in footnote fourteen of the Amended Complaint refers to Manager A and Manager B, without even mentioning whether Manager A and Manager B have similar holdings or investment strategies and admitting that the two Managers have different risks.

---

DEFS' MOT. TO DISMISS THE AM. COMPL.                    12
(Case No. 2:22-cv-01082-JRL)

investments' asset allocations and styles. But the Sharpe ratio is not in itself a TDF—it is simply a metric one can use to compare the risk-adjusted returns for any two kinds of investments. As Defendants correctly note, courts that have rejected TDF comparisons have done so not because the plaintiffs advanced the wrong metrics, but rather because the underlying investment strategies and styles were meaningfully different to start."); *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 14-15 (same).

In fact, the plaintiffs in *White* alleged the same sorts of risk and return metrics in trying to state a claim in that case. Specifically, the *White* plaintiffs alleged that the defendants should have offered a stable value fund instead of the challenged money market fund because both funds were capital preservation funds and because the money market fund *had higher risk and lower returns*. *White v. Chevron Corp.*, Am. Compl., Docket 41, Exhibit 5, ¶¶ 54-60. The *White* amended complaint included charts and graphs, and alleged:

> 54. Chevron did not weigh and consider equally the Money Market Fund's risk and return to Plan participants as compared to readily available alternatives because when taken together, the superiority of stable value funds over the past ten years under both criteria are clear. *The lower risk (lower standard deviation) and higher returns of a stable value fund compared to a money market fund are shown graphically below.*
>
> 55. *The superiority of stable value funds' risk vs. return profile compared to money market funds extends well beyond the ten-year period identified above.* Over the period January 1989 through December 2009, stable value returns "exhibited both a higher mean *and lower volatility* [risk] than either money market or intermediate–term government/credit bond returns."
>
> 60. Vanguard's stable value fund has greatly outperformed the Money Market Fund over one-, three-, five-, and ten-year periods.

*Id.* (emphasis and brackets added; charts and graphs omitted). As this Court knows, the Ninth Circuit affirmed dismissal of those allegations because they did not allow any inference of imprudence.

Since *White*, other courts have rejected similar attempts to muddy the waters through allegations of risk-adjusted returns. In *Anderson v. Intel Corp.*, for instance, then–District Judge Koh reinforced the widely accepted principle that "allegations of poor performance, standing

alone, are insufficient to state a claim for breach of the duty of prudence," even though the plaintiffs alleged that the challenged TDFs underperformed other TDF suites "both in absolute terms *and on a risk-adjusted basis.*" *See, e.g.*, *Anderson v. Intel Corp.*, 2021 WL 229235, at *7-8 (N.D. Cal. Jan. 21, 2021) (emphasis added), *appeal filed*, No. 22-16268 (9th Cir. Aug. 22, 2022). *See also Booz Allen Hamilton*, *Capital One*, *supra*.

This case is no different than *White*, *Anderson*, *Capital One*, or *Booz Allen Hamilton*. Whether Plaintiffs' underperformance allegations are considered on absolute or risk-adjusted terms, at the end of the day, they are still just that—underperformance allegations alone—which fail to state a plausible claim, as the Court already held.

### 2. Plaintiffs Fail to Allege Any Meaningful Benchmark(s) for the BlackRock TDFs, Whether the Comparator TDFs or Otherwise.

As explained previously, even if Plaintiffs could allege sufficient facts, beyond mere three- and five-year underperformance at certain times during the class period, for Plaintiffs to plausibly allege that "a prudent fiduciary in like circumstances would have selected a different fund based on the . . . performance of the selected fund, [they] must provide a sound basis for comparison—a meaningful benchmark." *Meiners*, 898 F.3d at 822. This requires more than identifying investment alternatives with "some similarities." *Id.* at 823. Rather, as the Courts of Appeals have uniformly held in affirming Rule 12(b)(6) dismissal of similar challenges to target-date investments, Plaintiffs must plead facts showing that their investment alternatives had the same strategies, styles, asset allocations, and risk profiles to the BlackRock TDFs. *See id.* (rejecting comparison of target-date funds that had "different investment strateg[ies]" based on different bond allocations); *see also Davis v. Salesforce.com Inc.*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (rejecting comparison of actively and passively managed target-date funds); *CommonSpirit,* 37 F.4th at 1167 (rejecting comparison of two different Fidelity target-date products that had "distinct goals and distinct strategies"); *cf. Albert*, 47 F.4th at 582 (affirming dismissal of investment challenge that did not rely on "a sound basis for comparison"); *see also generally* MTD Mem., Docket 27, at 12-

14 (and cited cases).

The Amended Complaint relies on the exact same Comparators from the original complaint, plus one new comparison to the S&P Target Date Index. Neither approach salvages Plaintiffs' claim. *See Capital One*, Mem. Op. and Order, Exhibit 1, at 11; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 11.

### a.    The Comparator TDFs Are Still Not Meaningful Benchmarks.

The Comparator TDFs remain inapt benchmarks for the BlackRock TDFs for multiple reasons. Unlike the BlackRock TDFs, which are passively managed, two of the four Comparator TDFs are actively managed. *See* MTD Mem., Docket 27, at 7, 11-13 (and cited cases). Moreover, all the Comparator TDFs utilize a "through-retirement" strategy while the BlackRock TDFs utilize a "to-retirement" strategy. *See id.* at 12-13 (and cited cases). The Amended Complaint admits that these differences mean that the different funds—"through-retirement" versus "to-retirement," active versus passive—are designed to address and mitigate different risks. Am. Compl. ¶¶ 26-27. And Plaintiffs do not and cannot allege that the BlackRock TDFs have the same equity and bond allocations as the Comparator TDFs, whether generally or specifically. *See* MTD Mem., Docket 27, at 14-15 (and cited cases).

The Amended Complaint ignores these points altogether. If anything, Plaintiffs seem to thumb their nose at the suggestion that they need to compare the BlackRock TDFs to "meaningful benchmarks" at all, despite the uniform Court of Appeals precedent on this point. To state a plausible ERISA fiduciary-breach claim, Plaintiffs must at least plead meaningful benchmarks. They do not—the Comparator TDFs remain just as meaningless as benchmarks for the BlackRock TDFs as they were a month or two ago. *See Capital One*, Mem. Op. and Order, Exhibit 1, at 12 ("The Amended Complaint fails for the additional and independent reason that Plaintiff has not pled meaningful benchmarks against which this Court can assess his allegations of the fiduciaries' imprudence."); *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 12 (same).

**b.      The S&P Target Date Index Is Not a Meaningful Benchmark.**

That leaves Plaintiffs' new performance comparator for the BlackRock TDFs: an S&P Target Date Index. For several reasons, this cannot save their claims.

For starters, the S&P Target Date Index suffers from the same problems that render the Comparator TDFs inapt benchmarks—it does not differentiate between TDFs with different investment attributes, including as to "passive" versus "active" underlying investments, "to retirement" versus "through retirement" glidepaths, varying equity and bond allocations, and more. *See Capital One*, Mem. Op. and Order, Exhibit 1, at 13; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 13. The Amended Complaint admits this, describing the S&P Target Date Index as "a composite of the *disparate strategies and styles* present in the broad universe of investable alternative TDFs." Am. Compl. ¶ 46 (emphasis added). Plaintiffs go on to allege that the S&P Target Date Index is "an amalgamation of the different characteristics of TDF strategies," including those with "actively and passively managed underlying funds," "different risk profiles," and "different asset allocations[.]" *Id.* Those are the very same problems that dictate that the four individual Comparator TDFs were inapt. *See Capital One*, Mem. Op. and Order, Exhibit 1, at 14; *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 14. In fact, Plaintiffs already tried that amalgamation in the original Complaint by comparing the BlackRock TDFs to the "average" allocations of the Comparator TDFs. Compl. ¶ 41 (comparing Blackrock equity allocations to the "Comparator TDF Average" equity allocations). Plaintiffs cannot sidestep these same shortcomings by wrapping them up in an S&P Index that is just an "amalgamation" of the same Comparator TDFs (plus some others) and their differing investment styles, strategies, risk profiles, and asset allocations—which still differ from the BlackRock TDFs whether they are considered on an individual TDF-by-TDF suite basis or as a composite. Just like the underlying Comparator TDFs themselves, the S&P Target Date Index is not a meaningful benchmark as a matter of law.

Courts around the country have rejected similar attempts to use industry averages and medians for these very reasons—they combine a wide range of funds without differentiating

between different types of investment styles and strategies. *See, e.g.*, *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *3 n.9 (N.D. Cal. Oct. 5, 2020), *aff'd in rel. part*, 2022 WL 1055557 (9th Cir. Apr. 8, 2022) (rejecting use of "ICI Median Fee" because it failed to differentiate between passively and actively managed funds); *Parmer v. Land O'Lakes*, 518 F. Supp. 3d 1293, 1303-04 (D. Minn. 2021) (same); *Rosenkranz v. Altru Health Sys.*, 2021 WL 5868960, at *10 (D.N.D. Dec. 10, 2021) ("Plaintiff failed to allege that the ICI Median Report, which contains both actively and passively managed funds, is a meaningful benchmark."); *cf. e.g. Kendall v. Pharm. Prod. Dev., LLC*, 2021 WL 1231415, at *7 (E.D.N.C. Mar. 31, 2021) (rejecting reliance on broad-based category medians because they failed to "compare sufficiently similar funds," including in terms of investment style, strategy, and the like).

The plaintiffs in *Wehner v. Genentech* (represented by some of the same plaintiffs' counsel as here) tried this same approach with their failed TDF challenge in that case. 2021 WL 2417098 (N.D. Cal. June 14, 2021). After the court dismissed the original TDF claim for failure to allege a meaningful benchmark, the plaintiffs attempted to amend by adding performance comparisons against the same S&P Target Date Indices that Plaintiffs point to here. The *Genentech* court rejected that tactic. *See id.* at *8.[10] As with their original comparators, the court reasoned, plaintiffs had not shown that S&P Indices shared the same "styles and strategies to support a finding of 'meaningful benchmark'" to the challenged TDFs. *Id.* Judge Nachmanoff reached the same conclusion in *Capital One* and *Booz Allen Hamilton*. *Capital One*, Mem. Op. and Order, Exhibit 1, at 13-14 ("The S&P Index is not an actual fund. Rather, it is a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs. . . . Because funds with distinct goals and distinct strategies are inapt comparators, there is no sound basis on

---

[10] Plaintiffs' allegations as to S&P Target Date Indices in this case mirror the allegations that the *Genentech* court rejected. *Compare* Am. Compl. ¶¶ 45-46 (describing S&P Target Date Indices) & ¶¶ 49-51 (comparing the BlackRock TDFs to the performance of the S&P Target Date Indices), *with Wehner v. Genentech*, No. 3:20-cv-6894, Docket 46, Am. Compl. ¶¶ 144-45 (describing S&P Target Date Indices and alleging that the challenged TDFs underperformed the indices).

which the Court can compare the BlackRock TDFs with the S&P Index.") (internal quotations and citations omitted); *Booz Allen Hamilton*, Mem. Op. and Order, Exhibit 2, at 13-14 (same). The same is true here.[11]

Separately, Plaintiffs' reliance on the S&P Target Date Index is particularly unavailing in this case because of the specific S&P Index category they chose. As noted, the S&P Indices include three different categories—a generic category that gloms together all TDFs across investment strategies, plus two different style-based categories that separate out the constituent TDF suites by "to retirement" and "through retirement" strategies. *See* Exhibit 4, Methodology. Plaintiffs do not even attempt to compare the "to retirement" BlackRock TDFs to the "to retirement" S&P Index. Instead, Plaintiffs used the generic S&P Target Date Index, which they knew would be heavily influenced by the weighting of the "through retirement" TDF suites that are included. As a publicly available annual S&P Target Date Scorecard publication explains:

> Past performance of the "Through" glide path category, as represented by the S&P Target Date Through benchmarks, *is significantly different* from that of the "To" category, as represented by the S&P Target Date To benchmarks.

Exhibit 6, S&P Target Date Scorecard (2018) ("Scorecard"), at 1 (emphasis added). In other words, Plaintiffs are just trying to use the same inapt "through retirement" target-date funds and wrap them up in an "index." And Plaintiffs do not allege that a "to retirement" strategy is unreasonable or imprudent. That is not a meaningful benchmark.

To take an example, consider the BlackRock 2030 TDF (one of the only vintages Plaintiffs personally selected) at the end of 2018, in the midst of the putative class period. According to Plaintiffs, the BlackRock 2030 TDF underperformed the S&P Target Date Index as follows:

|  | 3-Year Return 4Q18 | 5-Year Return 4Q18 |
| --- | --- | --- |
| BlackRock 2030 TDF | 5.70 | 4.27 |

[11] The Court may also recall that it was the *Genentech* case in which some of the same plaintiffs' lawyers as here pointed to the BlackRock TDFs' strong performance in arguing that another TDF suite was imprudent. *See* MTD Mem., Docket 27, at 17 n.13.

| | | |
|---|---|---|
| Performance vs. S&P TDF Index | (0.08) | (0.24) |

Even setting aside that these returns do not show significant underperformance and are limited to three- and five-year performance data only, they merely reflect differences between "to" and "through" retirement strategies. If one uses the S&P "To" Index data, the BlackRock 2030 TDF *outperformed* on both a three- and five-year basis:

| | 3-Year Return 4Q18 | 5-Year Return 4Q18 |
|---|---|---|
| BlackRock 2030 TDF | 5.70 | 4.27 |
| S&P Target Date "To" TDF | 5.40 | 4.16 |
| Performance vs. S&P TDF Index | 0.30 | 0.11 |

Scorecard, Exhibit 6, at 4. Applying this same exercise across the relevant period yields the same result—the BlackRock TDFs compare more favorably to the "to retirement" category of the S&P Index than the general category.[12] This is not to say the "to retirement" S&P Target Date Index would itself be an appropriate benchmark. It simply shows why Plaintiffs' use of the S&P Target Date Index is especially flawed in this case and why it cannot be a meaningful benchmark as a matter of law.

In short, Plaintiffs' Amended Complaint does nothing to cure their meaningful-benchmark problem. The Amended Complaint should be dismissed.

**3.    Plaintiffs Still Ignore the Public Ratings, and Market Assessments of the BlackRock TDFs Further Refute Any Suggestion of Imprudence.**

Finally, the Amended Complaint continues to ignore the significant public information that reflects the market's overwhelmingly positive assessment of the BlackRock TDFs. As Microsoft previously explained, this includes "Gold" ratings from Morningstar (better than some of the

---

[12] To take one other example, consider the BlackRock 2020 TDF—the only other vintage that Plaintiffs personally selected. *See* Am. Compl. ¶¶ 9-10. As of 4Q 2018, Plaintiffs allege that its three-year and five-year performance against the S&P Index was (0.33) and (0.40), respectively. *Id.* ¶ 51. But when compared to the S&P "To" Index, the BlackRock 2020 TDF has three-year and five-year performance of 0.06 and (0.02), respectively. *See* Scorecard, Exhibit 6, at 4.

Comparator TDFs), tens of billions in new investment inflows in recent years (reflecting positive market judgment about the strength of the funds), and more. *See* MTD Mem., Docket 27, at 6, 16-17. These are the same sorts of factors the Sixth Circuit relied upon in rejecting a nearly identical TDF-fund challenge in *CommonSpirit* (brought by some of the same plaintiffs' lawyers as here). *See CommonSpirit*, 37 F.4th at 1168. As the Sixth Circuit explained, "[n]othing in these reports suggests that the Freedom Funds' reputation was bad enough when viewed in the market as a whole that a prudent plan administrator should never have included them in the offerings or should have precipitously dumped them." *Id.* This Court should hold the same in this case.

## C.   Plaintiffs' Secondary Claims Fail as a Matter of Law.

As the Court previously found, Plaintiffs' claims for failure to monitor (Count II), Am. Compl. ¶¶ 84-92, and knowing participation in fiduciary breaches by non-fiduciaries (Count III), *id.* ¶¶ 93-95, are derivative of their primary claim for breach of ERISA's duty of prudence (Count I). Order, Docket 57, at 19. Because Plaintiffs' primary claim fails, so, too, do their others.

## CONCLUSION

The Court has given Plaintiffs two opportunities to allege sufficient facts to support plausible claims for relief under ERISA. Plaintiffs have come up short both times. The Court should dismiss the Amended Complaint in its entirety and with prejudice.

Dated: March 3, 2023

*The undersigned certifies that this memorandum contains 7,536 words, in compliance with the Local Civil Rules.*

Respectfully submitted,

*s/ Jeremy P. Blumenfeld*

*s/ Molly A. Terwilliger*

Molly A. Terwilliger
Morgan, Lewis & Bockius LLP
1301 Second Avenue, Suite 2800
Seattle, WA 98101
T: (206) 274-6400

F: (206) 274-6401
molly.terwilliger@morganlewis.com

Jeremy P. Blumenfeld (admitted pro hac vice)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
T: (215) 963-5000
F: (215) 963-5001
jeremy.blumenfeld@morganlewis.com

Sean McMahan (admitted pro hac vice)
Morgan, Lewis & Bockius LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
T: (214) 466-4000
F: (214) 466-4001
sean.mcmahan@morganlewis.com

Mayra Negrete (admitted pro hac vice)
Morgan, Lewis & Bockius LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626
T: (714) 830-0600
F: (714) 830-0700
mayra.negrete@morganlewis.com

*Counsel for Defendants*